******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALEXANDER, J., with whom ROBINSON, C. J., and ECKER, J., join, dissenting. It is axiomatic that arbitration agreements are contracts and that an arbitrator has only those powers that are conferred on him or her by the arbitration agreement. See, e.g., *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 72, 856 A.2d 364 (2004) ("an arbitrator's jurisdiction is rooted in the agreement of the parties" (internal quotation marks omitted)). Case law establishes that, when an arbitrator violates an explicit directive contained in an arbitration agreement, especially a provision intended to ensure the fairness of the proceeding, the arbitrator has acted in excess of his or her authority and outside of the scope of the agreement. "[A]n arbitrary award outside of the scope of the agreement of arbitration is not binding [on] anyone, because it has no legal sanction." (Internal quotation marks omitted.) *Detroit Automobile Inter-Ins. Exchange* v. *Gavin*, 416 Mich. 407, 440, 331 N.W.2d 418 (1982); see also id. ("[t]he [arbitration] agreement . . . entered into between the parties is the law of the case" (internal quotation marks omitted)). In the present case, the employment agreement between the plaintiff, Iftikar Ahmed, and the defendant, Oak Management Corporation (Oak), contained an arbitration clause that incorporated the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association (AAA), which strictly circumscribe an arbitrator's authority to impose punitive sanctions[1] or to limit a party's right to assert claims and defenses, to present evidence, or to otherwise participate fully in the arbitration. See American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures (October 1, 2013) (AAA rules). Because the AAA rules clearly precluded application of the fugitive disentitlement doctrine[2] to deprive Ahmed of his right to arbitrate pursuant to the parties' agreement, I disagree with the majority that the arbitrator did not exceed the scope of his authority under General Statutes § 52-418 (a) (4) by applying that doctrine in this case. A person does not lose his or her contract rights because he or she has been accused of a crime; nor does a person's absconder status in a criminal prosecution extinguish his or her contractual rights.

I also disagree with the majority that the arbitrator did not engage in misconduct under § 52-418 (a) (3) by denying Ahmed an opportunity to present evidence and argument at a hearing on the merits of the parties' respective claims. By its express terms, § 52-418 (a) (3) mandates that the arbitrator hear evidence from the parties that is "pertinent and material to the controversy . . . ." It also mandates vacatur of an arbitral award when the arbitrator engages in "any other action by which the rights of any party have been prejudiced

. . . ." General Statutes § 52-418 (a) (3). In the present case, the parties each had a right to a hearing, which was prejudiced by the arbitrator's action. Section 5706 (1) and (2) of title 10 of the Delaware Code Annotated (2013), which governed the parties' agreement, expressly mandates that the arbitrator hold a hearing on the merits of the parties dispute and, upon complaint of one of the parties, it authorizes the courts to intervene and order the arbitrator "to proceed promptly with the hearing."[3] Subdivision (2) of the statute further provides that, in addition to the right to be heard and to present material evidence, the parties are "entitled . . . to cross-examine witnesses appearing at the hearing." Del. Code Ann. tit. 10, § 5706 (2) (2013). A failure to conduct a hearing in accordance with the demands of § 5706 is recognized as a ground for vacatur under Delaware law.[4] See Del. Code Ann. tit. 10, § 5714 (a) (4) (2013). The arbitrator in the present case did not conduct a hearing, much less allow Ahmed to present material evidence and to cross-examine Oak's witnesses. He therefore engaged in misconduct under Connecticut law by denying Ahmed the hearing to which he was entitled by the arbitration clause in the parties' agreement. Accordingly, I respectfully dissent.

I

I begin with Ahmed's claim that the arbitrator exceeded his authority by preventing him from presenting claims, evidence, or defenses to Oak's claims in violation of the AAA rules. "[C]ourts must rigorously enforce arbitration agreements according to their terms . . . including terms that specify . . . the rules under which that arbitration will be conducted . . . ." (Citations omitted; internal quotation marks omitted.) *American Express Co.* v. *Italian Colors Restaurant*, 570 U.S. 228, 235, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013). "The standard for reviewing a claim that the award does not conform to the submission requires what we have termed 'in effect, de novo judicial review.' " *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 84, 881 A.2d 139 (2005).

An arbitrator's violation of the rules specified in the arbitration agreement—or any other explicit directive contained in the agreement—is universally recognized as a ground for vacatur. See, e.g., *Edstrom Industries, Inc.* v. *Companion Life Ins. Co.*, 516 F.3d 546, 552 (7th Cir. 2008) ("[P]recisely because arbitration is a creature of contract, the arbitrator cannot disregard the lawful directions the parties have given [him]. If they tell him to apply Wisconsin law, he cannot apply New York law."), overruled in part on other grounds by *Hall Street Associates, LLC* v. *Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *Apache Bohai Corp. LDC* v. *Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007) ("[when] arbitrators act 'contrary to express contractual provisions,' they have exceeded their powers"),

overruled in part on other grounds by *Hall Street Associates, LLC* v. *Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008); *International Union, United Mine Workers of America* v. *Marrowbone Development Co.*, 232 F.3d 383, 388 (4th Cir. 2000) ("courts owe no deference to an arbitrator who has failed to provide the parties with a full and fair hearing [pursuant to the terms of their arbitration agreement]"); *Executone Information Systems, Inc.* v. *Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994) ("arbitral action contrary to express contractual provisions will not be respected [by courts]" (internal quotation marks omitted)); *Local 1199, Drug, Hospital & Health Care Employees Union, RWDSU, AFL-CIO* v. *Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) (arbitrator "may not impose a remedy [that] directly contradicts the express language of the collective bargaining agreement" (internal quotation marks omitted)); *Bonshire* v. *Thompson*, 52 Cal. App. 4th 803, 805–806, 60 Cal. Rptr. 2d 716 (1997) (when arbitration clause in parties' agreement specifically provided that no extrinsic evidence could be introduced in arbitration proceeding, arbitrator exceeded his powers in considering such evidence), review denied, California Supreme Court, Docket No. S061924 (July 16, 1997); *Malekzadeh* v. *Wyshock*, 611 A.2d 18, 21 (Del. Ch. 1992) ("if [the arbitrator's] actions are in direct contradiction to the express terms of the agreement of the parties, he has exceeded his authority"); *Detroit Automobile Inter-Ins. Exchange* v. *Gavin*, supra, 416 Mich. 438 (when arbitration agreement stipulated that arbitration panel's decision must be unanimous, "a less than unanimous award was not what the parties agreed to, [and therefore] it could not be enforced"); *Washington* v. *Washington*, 283 Mich. App. 667, 672, 770 N.W.2d 908 (2009) ("arbitrators have exceeded their powers whenever they act beyond the material terms of the contract from which they primarily draw their authority" (internal quotation marks omitted)); *Seagate Technology, LLC* v. *Western Digital Corp.*, 854 N.W.2d 750, 765 (Minn. 2014) ("the scope of arbitrator authority is a matter of contract . . . and parties are always free to fashion arbitration agreements in ways that limit the arbitrator's power to award certain types of relief" (citation omitted)).

The law in Connecticut is no different. This court has stated repeatedly that, because arbitration is a creature of contract, "[a] person can be compelled to arbitrate a dispute only if, to the extent that, *and in the manner which, he has agreed so to do*. . . . [I]t is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed." (Citations omitted; emphasis added; internal quotation marks omitted.) *Nussbaum* v. *Kimberly Timbers, Ltd.*, supra, 271 Conn. 72; see also *Levine* v. *Advest, Inc.*, 244 Conn. 732, 745, 714 A.2d 649 (1998) ("[a]rbitration agreements are contracts and their meaning is to be determined . . . under accepted

rules of [state] contract law" (internal quotation marks omitted)). In accordance with these well established principles, we have recognized that "[t]he arbitrator is empowered to decide all issues of fact and law unless he or she is contractually restricted from doing so in some specific way by the language of the arbitration clause." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 86 n.7. The majority acknowledges as much, noting that courts will vacate awards on the ground that the arbitrator has violated the express terms of the arbitral rules specified in the arbitration agreement.

AAA Rule R-32 (a) provides that each party has a right to present evidence and allows the arbitrator to "vary" this right only if *"the parties are treated with equality and . . . each party has the right to be heard and is given a fair opportunity to present its case."*[5] (Emphasis added.) By granting Oak's motion for application of the fugitive disentitlement doctrine without allowing Ahmed any opportunity to respond, the arbitrator (1) denied Ahmed any opportunity to present evidence in his defense, and (2) did so without affording Ahmed an opportunity to be heard. There is no ambiguity as to whether this treatment violated the express terms of Rule R-32 (a). Even if the language of Rule R-32 (a) could be expanded to permit the arbitrator to deny Ahmed the right to present evidence, as the majority suggests, it expressly requires that Ahmed have the opportunity to be heard before such an extreme measure is imposed. Fundamental fairness in arbitration requires the "opportunity to be heard and to present relevant and material evidence and argument before the decision makers . . . ." *Bowles Financial Group, Inc.* v. *Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994). The arbitrator's application of the fugitive disentitlement doctrine resulted in a one-sided presentation by Oak of factual allegations and disputed legal arguments that Ahmed was never given an opportunity to contest. The arbitrator heard Oak's reasons for applying the doctrine but never allowed Ahmed to give his reasons against applying it. This manifestly unequal treatment of the parties exceeded the arbitrator's authority under the express terms of Rule R-32 (a).

Additionally, the arbitrator exceeded his authority under AAA Rule R-58, titled "Sanctions," which provides: "(a) The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

"(b) The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application." The arbitrator's conduct in this case violated the express terms of Rule R-58 in two distinct ways.

First, the arbitrator violated AAA Rule R-58 (b) by imposing a sanction without providing the "party that is subject to [the] sanction request with the opportunity to respond prior to making any determination regarding the sanction." Although the majority acknowledges that "the equitable remedy of disentitlement fairly may be characterized as a sanction," it is undisputed that the arbitrator granted Oak's request for this sanction without hearing from Ahmed on this issue, without inviting Ahmed to respond, and without waiting for the June 8, 2020 deadline for Ahmed to respond. Proceeding in this manner violated the express terms of Rule R-58, which require the arbitrator to provide a party with an opportunity to respond before imposing a sanction. See AAA Rule R-58. The violation of this rule could not be any more evident.

Second, the arbitrator violated AAA Rule R-58 (a) by imposing a sanction on Ahmed for conduct other than a "fail[ure] to comply with [his] obligations under [the AAA] rules or with an order of the arbitrator." Id. The arbitrator's authority, although broad, is limited to the authority conferred by the AAA rules. See, e.g., *Nussbaum* v. *Kimberly Timbers, Ltd.*, supra, 271 Conn. 72 (arbitrator's authority is limited to authority conferred by parties to conduct arbitration in manner they have agreed). The AAA rules grant arbitrators the authority to manage the efficient conduct of the arbitration and to control the parties by threat of sanctions. Rule R-58 (a) authorizes the arbitrator to impose sanctions under two conditions: (1) failure to comply with the AAA rules, or (2) failure to comply with an order of the arbitrator. See AAA Rule R-58 (a). Neither of those conditions was met in this case.

The reality is that the arbitrator imposed a sanction of his own invention, one not included in AAA Rule R-58 or any fair construction of its terms. By applying the fugitive disentitlement doctrine, the arbitrator imposed a severe sanction against Ahmed for conduct (remaining in India) that violated no arbitral rule or order. Ahmed was never ordered by the arbitrator to return to the United States. His location in India manifestly was not a circumstance falling within the scope of Rule R-58. By concluding otherwise, the arbitrator exceeded the authority conferred on him by the arbitration clause in the parties' agreement. See, e.g., *Seagate Technology, LLC* v. *Western Digital Corp.*, supra, 854 N.W.2d 761 and n.8 ("[t]he arbitrator's ability to issue punitive sanctions is controlled by the arbitration agreement," and, "[t]herefore, parties are able to include or exclude the

use of punitive sanctions when constructing an arbitration agreement, either through express provision or through the incorporation of a particular set of arbitration rules [such as the AAA rules]").

Furthermore, as previously stated, an arbitrator's authority to limit a party's participation in the arbitration on the basis of a violation of the AAA rules or an order of the arbitrator is expressly conditioned on that party's right to be heard prior to the imposition of the sanction. See AAA Rule R-58. Again, this condition was not met in this case. To the contrary, as the majority opinion indicates, the arbitrator granted Oak's motion for application of the fugitive disentitlement doctrine within a week of its filing, without allowing Ahmed any opportunity to respond.

The majority contends that the arbitrator did not ignore AAA Rule R-58 (a) but merely interpreted the AAA rules to allow sanctions for conduct other than a violation of an arbitral rule or order. I agree that arbitrators have broad discretion to interpret the text of the arbitral rules chosen by the parties. I do not agree, however, that the arbitrator's decision in this case can be viewed as a mere act of interpretation. The arbitrator's ruling is not grounded in any reasonable reading of the language of Rule R-58, which is the AAA rule governing sanctions. Instead, the arbitrator unilaterally created an entirely new basis for the imposition of sanctions that bears no connection to the grounds specified in Rule R-58.

The parties' choice to arbitrate according to a particular set of rules would mean little if the arbitrator could modify those rules by adding new rules derived from other sources. Despite the great deference given to arbitrators, when the arbitrator "base[s] his award on some body of thought, or feeling, or policy or law that is outside the contract . . . the award can be said not to draw its essence from the [parties agreement]. . . . In such cases the [United States] Supreme Court has said that the arbitrator is dispens[ing] his own brand of . . . justice. [*United Steelworkers of America* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)]." (Citation omitted; internal quotation marks omitted.) *United Food & Commercial Workers*, *Local 1546* v. *Illinois-American Water Co.*, 569 F.3d 750, 755 (7th Cir. 2009). In *Stolt-Nielsen S. A.* v. *AnimalFeeds International Corp.* 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010), the United States Supreme Court held that an arbitral panel exceeded its authority when it interpreted an arbitration agreement to permit class arbitration while the agreement was silent as to whether class arbitration was permitted. Id., 672–73. The court reasoned that, although the arbitral panel was empowered to interpret the terms of the arbitration agreement, the silence of the arbitration agreement did not authorize the panel to "[proceed] as

if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation." Id., 673–74. In the present case, the arbitrator imposed a sanction on Ahmed that was not authorized by any reasonable interpretation of the AAA rule governing sanctions. In so doing, he exceeded the authority that was conferred on him by the arbitration clause in the parties' agreement to conduct an arbitration according to the AAA rules.

The majority concludes that the arbitrator's authority to deprive Ahmed of his express rights under the arbitration clause in the parties' agreement derives from AAA Rule R-47 (a), which provides that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." There are two reasons why Rule R-47 (a) does not authorize the arbitrator's conduct in this case. First, Rule R-47 (a) governs the relief that the arbitrator may grant in the award;[6] it confers no authority on the arbitrator to ignore the ground rules the parties' have set up to ensure a fair hearing and to limit the arbitrator's authority to act. One need look no further than the cases cited in the majority opinion to understand that Rule R-47 (a) is concerned only with the type of relief that the arbitrator can include in the final award *after a hearing on the merits of the parties' respective claims*. All but one of the cases cited by the majority concerned the arbitrator's authority under Rule R-47 (a) to award attorney's fees, punitive damages, or other monetary sanctions as part of the final award. See *Wisconsin Automated Machinery Corp.* v. *Diehl Woodworking Machinery, Inc.*, Docket No. 07 C 6840, 2008 WL 4889012, *4–5 (N.D. Ill. August 7, 2008); *In re Matter of Arbitration Between Prudential-Bache Securities, Inc. & Depew*, 814 F. Supp. 1081, 1083 (M.D. Fla. 1993); *Willoughby Roofing & Supply Co.* v. *Kajima International, Inc.*, 598 F. Supp. 353, 357 (N.D. Ala. 1984), aff'd, 776 F.2d 269 (11th Cir. 1985); *Superadio Ltd. Partnership* v. *Winstar Radio Productions, LLC*, 446 Mass. 330, 337–39, 844 N.E.2d 246 (2006); *Clark* v. *Garratt & Bachand, P.C.*, Docket No. 344676, 2019 WL 3941493, *3 (Mich. App. August 20, 2019); *Minerals Development & Supply Co.* v. *Superior Silica Sands, LLC*, Docket No. 2012AP2328, 2013 WL 594332, *9 (Wis. App. November 7, 2013) (decision without published opinion, 352 Wis. 2d 246, 841 N.W.2d 580), review denied, 354 Wis. 2d 862, 848 N.W.2d 858, cert. denied, 574 U.S. 873, 135 S. Ct. 246, 190 L. Ed. 2d 137 (2014). Another concerned whether the arbitrator could order specific performance in lieu of awarding damages. See *Schmidt* v. *Schmidt*, Docket No. 1 CA-CV 12-0701, 2014 WL 3882178, *6–7 (Ariz. App. August 5, 2014). None of the cases, however, involved an arbitrator's refusal to hear evidence or to conduct a hearing or failure to abide by express contractual provisions limiting the arbitra-

tor's authority to impose punitive sanctions.

Second, even if AAA Rule R-47 (a) reasonably could be construed as authorizing the arbitrator to issue orders related to the conduct of the arbitration, it does not grant the arbitrator any authority to violate the other AAA rules. By its express terms, Rule R-47 (a) requires that the arbitrator's orders comply with the explicit directives contained in the arbitration agreement, which, in this case, incorporates the AAA rules. Any relief afforded under Rule R-47 (a) must therefore comply with those rules in order to be "within the scope of the agreement of the parties . . . ." AAA Rule R-47; see, e.g., *International Union, United Mine Workers of America* v. *Marrowbone Development Co.*, supra, 232 F.3d 389 (vacating arbitral award as outside scope of arbitration agreement when arbitrator failed to conduct evidentiary hearing in contravention of contract provision that he "conduct a hearing in order to . . . receive evidence" (internal quotation marks omitted)); *Local 1199, Drug, Hospital & Health Care Employees Union, RWDSU, AFL-CIO* v. *Brooks Drug Co.*, supra, 956 F.2d 25 (arbitrator "may not impose a remedy [that] directly contradicts the express language of the collective bargaining agreement" (internal quotation marks omitted)).

In response, the majority relies on the oft cited principle that courts may not set aside an arbitrator's award simply because he "committed serious error, or the decision is incorrect or even whacky." (Internal quotation marks omitted.) *Johnson Controls, Inc.* v. *Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013). "Factual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards." (Internal quotation marks omitted.) Id., 1026. Thus, so long as an arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." (Internal quotation marks omitted.) *Major League Baseball Players Assn.* v. *Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001).

The majority's reliance on that principle is misplaced. Although courts defer to the factual and legal determinations of the arbitrator on the merits, they also "rigorously enforce" the terms of the arbitration agreement, including the arbitral rules specified by the parties. (Internal quotation marks omitted.) *American Express Co.* v. *Italian Colors Restaurant*, supra, 570 U.S. 233. It is "[p]recisely because arbitration awards are subject to such judicial deference . . . [that] it is imperative that the integrity of the process, as opposed to the correctness of the individual decision, be zealously safeguarded." *Goldfinger* v. *Lisker*, 68 N.Y.2d 225, 231, 500 N.E.2d 857, 508 N.Y.S.2d 159 (1986). "Even with an unrestricted submission . . . it is well settled that the award may be reviewed to determine if the arbitrators

exceeded their authority . . . ." *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 84. "The standard [of review in such circumstances] requires what we have termed in effect, de novo judicial review." (Internal quotation marks omitted.) Id. When an arbitration agreement incorporates specific guidelines meant to ensure that the parties have an equal opportunity to be heard and are otherwise treated fairly, an arbitrator who violates them is not acting within the scope of his authority, and, therefore, the resulting orders are entitled to no deference. See, e.g., *California Union Square L.P.* v. *Saks & Co., LLC*, 50 Cal. App. 5th 340, 349, 263 Cal. Rptr. 3d 841 (2020) (when arbitrator's ruling is contrary to express contractual provisions, it is not within scope of agreement, and "the warnings . . . concerning the limitations on judicial power over arbitration awards are [simply] not applicable" (internal quotation marks omitted)); *In re New York State Law Enforcement Officers Union, District Council 82, AFSCME, AFL-CIO*, 34 App. Div. 3d 1161, 1162, 824 N.Y.S.2d 800 (2006) ("[t]hese clear contractual provisions [requiring proof by a preponderance of the evidence] were ignored, not interpreted, by the arbitrator so [the court] did not substitute its interpretation of the contract for that of the arbitrator").

Parties entering into an arbitration agreement do so with the expectation that the rules they set for the arbitrator will be respected. See, e.g., *Nussbaum* v. *Kimberly Timbers, Ltd.*, supra, 271 Conn. 72 ("[i]t is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed" (internal quotation marks omitted)). "To confirm an arbitration award in excess of the powers granted by an arbitration agreement would destroy the very purpose of arbitration and be contrary to the sound policy of encouraging the settlement of private disputes by the voluntary agreement of the parties." (Internal quotation marks omitted.) *California Union Square L.P.* v. *Saks & Co., LLC*, supra, 50 Cal. App. 5th 349. Thus, "the cases establish one bright-line rule: arbitrators may not award a remedy that conflicts with express terms of the arbitrated contract. To the extent this means arbitrators may not award remedies expressly forbidden by the arbitration agreement or submission, the point is well taken. How the violation of an express and explicit restriction on the arbitrator's power . . . could be considered rationally related to a plausible interpretation of the agreement is difficult to see." (Citation omitted; internal quotation marks omitted.) *Advanced Micro Devices, Inc.* v. *Intel Corp.*, 9 Cal. 4th 362, 381–82, 885 P.2d 994, 36 Cal. Rptr. 2d 581 (1994). In the present case, the process Ahmed received fell far short of the process for which he had bargained. He was prevented from viewing the evidence presented against him. He was prevented from offering any evidence in his own defense or arguing the merits of

his case. He was subjected to these conditions without being given the opportunity to be heard on whether they should be applied. "No party agreeing to arbitration bargained for a proceeding such as this, and nothing in our precedent compels us to ignore these facts." *Costco Wholesale Corp.* v. *International Brotherhood of Teamsters, Local No. 542*, 850 Fed. Appx. 467, 469 (9th Cir. 2021).

In reaching a contrary conclusion, the majority casts Ahmed's claims in extremely narrow terms, asserting, for example, that "[his] excess of authority claim . . . rests on the premise that equitable relief is 'within the scope of the arbitration agreement of the parties' under AAA Rule R-47 (a) *only if the agreement expressly authorizes that relief*." (Emphasis added.) The majority also asserts that, "[b]ecause no express language of the agreement authorizes application of the fugitive disentitlement doctrine, Ahmed claims that its application is contrary to laws and rules incorporated into the agreement."

Throughout his appellate brief, Ahmed asserts that the arbitration award must be vacated because the arbitrator's disentitlement order contravened numerous express provisions of the parties' employment agreement —"specific AAA rule[s] setting forth specific, affirmative procedural requisites for arbitration." He further contends: "Unsurprisingly, Oak does not, and cannot, point to any provision of [the] employment agreement that would authorize a total due process deprivation. To the contrary, the arbitration clause provides that 'any arbitration procedures required by applicable federal or state law' 'shall govern' in any conflict. . . . The governing law clearly requires arbitrators to accord parties the procedural rights refused to . . . Ahmed. See [Del. Code Ann tit. 10, § 5706 (2) (2013)] ('[u]nless otherwise provided by the agreement . . . [t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing'); [see also General Statutes] § 52-418 (a) (3) (arbitrators required to 'hear evidence pertinent and material to the controversy' and to avoid actions 'by which the rights of any party' are 'prejudiced'); 9 U.S.C. § 10 (a) (3) [2018] (same). Application of the [fugitive] disentitlement doctrine thus violated the parties' [agreement]." (Citation omitted.) Ahmed further argues that the arbitrator, under the guise of fashioning an award, ignored "AAA rule[s] setting forth specific, affirmative procedural requisites for arbitration. . . . [Rule R-22]—the AAA rule that [Rule R-23] was designed to enforce—specifically establishes that arbitrators are affirmatively required to [safeguard] each party's opportunity to fairly present its claims and defenses. . . . Plainly, the opposite happened here. Critically, in addition to the foregoing, [Rule R-32 (a)] instructs that, although [t]he arbitrator has the discretion to vary the procedure of an arbitral proceeding,

his discretion is cabined by the requirement that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case." (Citations omitted; emphasis omitted; internal quotation marks omitted.)

I disagree with the majority's assertion that, "although Ahmed mentions in his brief to this court the United States Supreme Court's reference to the 'sanction of disentitlement' in his discussion of *Degen* v. *United States*, 517 U.S. 820, 828, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996), he does not characterize the [fugitive disentitlement] doctrine as a sanction that would be governed by the conditions for imposing sanctions contained in AAA Rule R-58 . . . ." When Ahmed describes the arbitrator's ruling as "a total due process deprivation," it advances his contention that the order constituted an extreme sanction. The same is true when he asserts: "Oak was unable to identify a single Delaware case supporting the breadth of disentitlement ordered here. . . . Ahmed did not engage in any wrongdoing in the arbitration warranting the imposition of a sanction—and, critically, the arbitrator never said he did." (Emphasis omitted.) In sum, Ahmed has argued that the arbitrator's order stripping him of his right to participate in the arbitration was a severe sanction unwarranted by anything he did during the proceedings.

The majority contends that my concerns regarding the arbitrator's failure to abide by the arbitration clause in the parties' agreement can be sidestepped because Ahmed presents his claim of error to this court without mentioning AAA Rule R-58 by name or specifically referring to its contents. Although I understand the legitimate concerns underlying the majority's point, I do not agree that we can or should ignore the rule violations at issue, which are plainly subsumed within Ahmed's claim that the arbitrator "exceeded his authority" under "the AAA rules" by "impos[ing] . . . a sanction" for conduct other than "wrongdoing in the arbitration . . . ." Ahmed's failure to cite a particular rule is not fatal to his claim because "it is well established that we may . . . review legal arguments that differ from those raised by the parties if they are subsumed within or intertwined with arguments related to the legal claim before the court." (Internal quotation marks omitted.) *Meribear Productions, Inc.* v. *Frank*, 340 Conn. 711, 732, 265 A.3d 870 (2021). Ahmed's claim is that the arbitrator "exceeded his authority" by depriving him of his procedural rights under "the AAA rules." This claim is broad enough for us to consider all of the AAA rules that the arbitrator's conduct may have violated. It requires us to consider both whether the arbitrator's conduct violated any of the AAA rules and whether any AAA rule authorizes the arbitrator's conduct. In conducting this inquiry, we are not limited to the particular rules that are named by each party. Indeed, I do not see how it is possible for us to consider whether

the arbitrator exceeded the scope of his authority under any of the rules without understanding the rules as a whole.

Ahmed has made this claim consistently throughout this litigation. In his application to vacate the arbitration award, which he submitted as a self-represented party, Ahmed argued that the award should be vacated because "[t]he arbitrator's powers are defined by and limited to the terms of the underlying agreement," and the arbitrator's decision was not authorized by the terms of the agreement, including AAA Rule R-47 (a). In his reply to Oak's opposition to his application to vacate, which he also submitted as a self-represented party, Ahmed clarified that "[t]here is no rule anywhere that says that [he] could not respond to dispositive motions. It would be a completely one-sided matter (which it was) to not allow responses or to not allow litigants to offer evidence in response to *dispositive* motions." (Emphasis in original.) For its part, Oak took a broad view of Ahmed's claim, describing it as a "kitchen sink filing," stating that "Ahmed claims that the arbitrator . . . exceeded his authority in [applying the fugitive disentitlement doctrine]" and arguing that "[t]aking the AAA rules and Delaware law together, it was plainly . . . within the scope of the arbitrator's authority to determine whether the doctrine applied here." In its filings, Oak refers repeatedly to "the AAA rules" in general as a source of authority for the arbitrator's actions, and Ahmed follows this practice in his brief on appeal. Consistent with the foregoing, during oral argument before this court, Ahmed's counsel argued that the arbitrator's actions violated the AAA rules in general, although he identified Rules R-23, R-32, and R-58 specifically. In fact, he argued that "Rule R-58 expressly precludes" the arbitrator's conduct in this case because "there was no finding whatsoever that . . . Ahmed did anything sanctionable . . . ."[7] In short, there is no suggestion in these filings and arguments that the scope of Ahmed's claim, or Oak's reply, has ever been limited to particular AAA rules identified by number.

The fact that the arbitrator decided the case on a dispositive motion without allowing Ahmed any opportunity to be heard on that motion was emphasized by Ahmed multiple times in his application to vacate the arbitration award, was emphasized again in his reply to Oak's opposition to his application to vacate, is quoted on the very first page of the trial court's memorandum of decision, and is raised repeatedly in his brief on appeal. Against this background, the majority's contention that this fact should be disregarded because it enters the case only through "a single sentence footnote in Ahmed's brief" is difficult to understand.[8]

Because I conclude that the arbitrator exceeded his authority under the arbitration clause in the parties'

agreement by denying Ahmed his procedural right to assert claims, to present evidence, and to contest Oak's claims in clear violation of the AAA rules, I would reverse the judgment of the trial court and remand the case to that court with direction to vacate the arbitration award. The case law makes clear that, when an arbitrator violates an arbitration agreement in the manner that occurred in this case, the resulting award has no legal sanction and must be vacated.

## II

I also disagree with the majority that the arbitrator did not engage in misconduct under § 52-418 (a) (3) by denying Ahmed an opportunity to present evidence and argument at a hearing on the merits of the parties' respective claims. By its express terms, § 52-418 (a) (3) mandates that the arbitrator hear evidence from the parties that is "pertinent and material to the controversy . . . ." It also mandates vacatur of an arbitral award when the arbitrator engages in "any other action by which the rights of any party have been prejudiced . . . ." General Statutes § 52-418 (a) (3). Section 5706 of title 10 of the Delaware Code Annotated, which is a procedural, rather than a vacatur, statute,[9] confers procedural rights on parties to an arbitration. It expressly mandates that the arbitrator hold a hearing on the merits of the parties' dispute, and, upon complaint of one of the parties, it authorizes the court to intervene and order the arbitrator "to proceed promptly with the hearing . . . ." Del. Code Ann. tit. 10, § 5706 (1) (2013). Subdivision (2) of the statute further provides that, in addition to the right to be heard and to present material evidence, the parties are "entitled . . . to cross-examine witnesses appearing at the hearing." Del. Code Ann. tit. 10, § 5706 (2) (2013). Because the arbitrator in the present case did not conduct a hearing, much less allow Ahmed to present material evidence and to cross-examine Oak's witnesses, he deprived Ahmed of his rights under both Connecticut and Delaware law, and, therefore, he committed misconduct under § 52-418 (a) (3).

None of the cases cited by the majority supports the proposition that an arbitrator, *solely* on the basis of the general grant of authority conferred on him by AAA Rule R-47 (a) to fashion an award, can deprive a party of his or her statutory right to a hearing, to present evidence, and to cross-examine witnesses. Indeed, if an arbitrator could do so, it would render the protections afforded under § 52-418 (a) (3) and § 5706 (2) of title 10 of the Delaware Code Annotated—the terms of which are cast in mandatory language—entirely illusory. Even if Rule R-47 (a) reasonably could be read so expansively, the parties' employment agreement expressly provides that, "[t]o the extent that any of the [AAA] [r]ules or anything in this arbitration clause conflicts with any arbitration procedures required by applicable federal or state law, the arbitration proce-

dures required by applicable law shall govern." In this instance, therefore, the procedures mandated by § 5706 (1) and (2) of title 10 of the Delaware Code Annotated must govern.

In the present case, the arbitrator decided the case by applying the fugitive disentitlement doctrine without hearing from Ahmed or providing him with an opportunity to be heard on the issue. The arbitrator granted Oak's motion to apply the fugitive disentitlement doctrine before hearing from Ahmed and before the June 8, 2020 deadline that had been set for Ahmed's response to other motions. It was in every sense an ex parte ruling because the arbitrator granted Oak's motion without providing Ahmed an opportunity to respond.

Federal and state courts have consistently held that vacatur is warranted when the arbitration proceedings were fundamentally unfair. See, e.g., *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir. 2013).[10] They also "agree that a fundamentally fair hearing requires . . . [an] opportunity to be heard . . . ." *Bowles Financial Group, Inc.* v. *Stifel, Nicolaus & Co.*, supra, 22 F.3d 1013. "[A]n arbitration award will [therefore] be vacated when the parties have agreed to a hearing yet one of the parties has been denied the opportunity to be heard . . . ." *MasTec North America, Inc.* v. *MSE Power Systems, Inc.*, 581 F. Supp. 2d 321, 327 (N.D.N.Y. 2008). Delaware law, which was specifically chosen by the parties in this case to govern their arbitration, is clear that, even in arbitration, "[t]he parties are entitled to be heard . . . ." Del. Code Ann. tit. 10, § 5706 (2) (2013). This principle of basic legal fairness has been applied to arbitrations for more than 100 years. See, e.g., *Stockwell* v. *Equitable Fire & Marine Ins. Co. of Providence, R.I.*, 134 Cal. App. 534, 541, 25 P.2d 873 (1933) ("although arbitrators are not bound by strict rules of evidence, they cannot transgress that fundamental principle of justice which declares that no man shall be condemned without the opportunity of being heard" (internal quotation marks omitted)); *Cassara* v. *Wofford*, 55 So. 2d 102, 106 (Fla. 1951) ("it is universally held that in arbitration proceedings . . . persons whose rights and obligations are affected thereby have an absolute right to be heard and to present their evidence, after reasonable notice of the time and place of the hearing"); *Thornton* v. *Thornton*, 159 S.W. 532, 534 (Ky. 1913) ("we cannot sanction [an arbitral award] rendered in . . . an ex parte proceeding [when] one party has had no opportunity to controvert the evidence of his adversary taken in his absence"); *Page* v. *Ranstead*, 92 Mass. (10 Allen) 295, 298 (1865) ("[t]here is no question of the correctness of the general proposition, that when a case is submitted to arbitration, it is the duty of the arbitrator to give the parties an opportunity to be heard, if they desire it, before making an award"). The principle is even afforded its own illustration in the proposed final

draft of the Restatement (Third) of the U.S. Law of International Commercial and Investor-State Arbitration. See Restatement (Third), U.S. Law of International Commercial and Investor-State Arbitration § 4.19, illustration (3) p. 707 (Proposed Final Draft 2019) ("Over the objection of *B*, an arbitral tribunal decides on the strength of *A*'s written submissions alone to issue an award in favor of *A* without permitting counter-submissions by *B*. *A* seeks to enforce the award, and *B* challenges the award on the ground that the arbitral tribunal committed misconduct in refusing to permit counter-submissions. A court may refuse to enforce the award.").

The principle that each party is entitled to an opportunity to be heard is so fundamental to our conception of fairness that it is a rare case in which it is transgressed. When it is violated, vacatur is consistently the result. For example, in one case, a procedural oversight led an arbitral panel to rule in favor of the petitioner, without affording the respondent an opportunity to present his case on the merits. *In re Arbitration of Certain Controversies Between Cofinco, Inc., & Bakrie & Bros., N. V.*, 395 F. Supp. 613, 614–15 (S.D.N.Y. 1975) (*Cofinco, Inc.*). The District Court held that, although "the [AAA] rules strongly [support] arbitral judgments as final within the province the parties have given to their chosen forum [and] only a miniscule proportion of awards is vulnerable in court . . . [t]he award . . . falls squarely and patently within this minute class." Id., 615.[11] In another case, also conducted under the AAA rules, an arbitral panel entered a preclusion order barring one party from participating in the case. *Coty Inc.* v. *Anchor Construction, Inc.*, Docket No. 601499-02, 2003 WL 139551, *2 (N.Y. Sup. January 8, 2003), aff'd, 7 App. Div. 3d 438, 776 N.Y.S.2d 795 (2004). The reviewing court held that "[d]ue process in arbitration means satisfying 'minimal requirements of fairness' " and that the preclusion order violated fundamental fairness by denying a party "the opportunity to be heard . . . ." Id., *7. In a third case, a "[u]nion was not given an opportunity to complete its presentation of proof regarding the arbitrability and/or merits of the grievances then under consideration." *Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 506* v. *E.D. Clapp Corp.*, 551 F. Supp. 570, 578 (N.D.N.Y. 1982), aff'd, 742 F.2d 1441 (2d Cir. 1983). The District Court held that, because "the [u]nion was not given the chance to present its case in full, the subject awards cannot stand." Id. The majority has not identified any case in which a court has enforced an arbitral award that was decided on an ex parte dispositive motion, without allowing each side an opportunity to be heard.

Even if we were to defer to the arbitrator's decision to apply the fugitive disentitlement doctrine, there can be no justification for the arbitrator's failure to permit Ahmed an opportunity to be heard on whether the doctrine should be applied. The arbitrator offered no such

justification in his order applying the doctrine; nor can one be found in the doctrine itself. There is no authority for the proposition that the fugitive disentitlement doctrine can be applied without providing each side an opportunity to be heard on whether the doctrine should be applied. This court has established a burden shifting framework for applying the doctrine that explicitly contemplates that each side will have an opportunity to be heard. See *State* v. *Brabham*, 301 Conn. 376, 386, 21 A.3d 800 (2011).

The majority concludes that, even if the arbitrator engaged in misconduct within the meaning of § 52-418 (a) (3), Ahmed has failed to establish that he was prejudiced by the arbitrator's actions. To demonstrate prejudice in Connecticut, Ahmed was required to show that the "ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 476–77, 899 A.2d 523 (2006). The majority concludes that Ahmed has failed to meet this burden because "[h]is brief to this court identifies no evidence, documentary or testimonial, that he had been prepared to offer if a hearing on liability had taken place. He makes no representation that he would have testified as to any specific material fact that could have cast doubt on his culpability for the acts alleged. Nor does he claim that he had any other basis, through cross-examination or otherwise, to impeach Oak's allegations." I disagree.

As an initial matter, a ruling on a dispositive motion that decides the issue of liability certainly affects the case. The arbitrator's application of the fugitive disentitlement doctrine not only affected the result, in a very real sense, it was the result. This is not a case in which the excluded testimony of a particular witness or a single ex parte email between the arbitrator and counsel may or may not have altered the course of the proceedings. Instead, the arbitrator, in one fell swoop, decided the issue of liability against a party as a sanction, without hearing evidence or receiving written briefing from the party whose case was declared over before it began. There can be no doubt that the result of the arbitration was dictated by the application of the fugitive disentitlement doctrine. The arbitrator's decision to apply the doctrine ex parte, without allowing Ahmed an opportunity to respond, plainly affected the result of the arbitration.

The majority requires Ahmed to identify evidence and arguments that he would have made on the merits had his case not been improperly dismissed. To require this sort of explanation before vacating an arbitral award issued in an arbitration proceeding that was dismissed before a hearing on the merits would subvert the interests of judicial economy that arbitration is meant to promote. To show prejudice, it is enough that the arbitrator exceeded his authority by deciding the case

on an ex parte dispositive motion in contravention of the AAA rules specified by the arbitration agreement.[12]

None of the three cases discussed previously, vacating arbitral awards for a denial of the opportunity to be heard, required details of the specific evidence and arguments that either party would have presented on the merits, and none of them required proof that, but for the denial of the opportunity to be heard, the arbitrator(s) would have reached a different result on the merits. See *Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 506* v. *E.D. Clapp Corp.*, supra, 551 F. Supp. 578 (vacating award without considering details of arguments and evidence not presented or either party's likelihood of success on merits); *In re Certain Controversies Between Cofinco, Inc., & Bakrie & Bros., N. V.*, supra, 395 F. Supp. 616 (vacating award and remanding to arbitration panel for new hearing without considering details of arguments and evidence not presented or either party's likelihood of success on merits); *Coty Inc.* v. *Anchor Construction, Inc.*, supra, 2003 WL 139551, *4, *12 (vacating award and remanding to arbitration panel for new hearing without considering details of arguments and evidence not presented or either party's likelihood of success, and noting that "the record does not clearly demonstrate what evidence was precluded").

Courts that have considered similar or lesser procedural claims under comparable or identical statutes have likewise held that deprivations of the type that occurred in the present case are prejudicial per se, requiring vacatur as a matter of law. See, e.g., *United States Life Ins. Co.* v. *Superior National Ins. Co.*, 591 F.3d 1167, 1174 (9th Cir. 2010) (under applicable statute, "the phrase 'refusing to hear evidence pertinent and material to the controversy' necessarily implies prejudice to the rights of a party, without regard to the final catch-all phrase"); *Tempo Shain Corp.* v. *Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) ("although not required to hear all the evidence proffered by a party, an arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and argument" (internal quotation marks omitted)); *Talel Corp.* v. *Shimonovitch*, 84 So. 3d 1192, 1194 (Fla. App. 2012) ("the failure of arbitrators to give notice and an opportunity to be heard is such misconduct or misbehavior as will vitiate an award, irrespective of the fact that there may have been no corrupt intention on the part of the arbitrators" (internal quotation marks omitted)); *Talel Corp.* v. *Shimonovitch*, supra, 1194 ("[b]y failing to hold a hearing on unliquidated damages, the arbitrator refused to hear evidence material to the controversy and thereby prejudiced substantially the rights of the defendants" (internal quotation marks omitted)); *Heartland Surgical Specialty Hospital, LLC* v. *Reed*, 48 Kan. App. 2d 237, 246, 287 P.3d 933 (2012) ("courts [are required] to vacate an arbitration award if the arbi-

trator(s) failed to conduct a hearing as provided under [the applicable statute]"); *Graham* v. *Wall*, 938 S.W.2d 892, 893 (Ky. App. 1997) ("[When] the arbitration agreement does not contain an express waiver of a hearing the parties are entitled [by statute] to an opportunity to be heard, [to] present evidence, and [to] cross-examine witnesses . . . . Because the arbitrators' decision is procedurally flawed, we do not address the substantive issues raised. This case is reversed and remanded and . . . the arbitrators [are ordered to] conduct a hearing in accordance with [the applicable statue]." (Citations omitted.)); *Volkmann* v. *Volkmann*, 688 N.W.2d 347, 348–49 (Minn. App. 2004) (Under applicable statute, "[t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses. . . . Not allowing one party to hear, respond to, or cross-examine the other constitutes conduct that prejudice[s] substantially the rights of a party." (Citation omitted; internal quotation marks omitted.)); *Bates* v. *McQueen*, 270 Va. 95, 102–103, 613 S.E.2d 566 (2005) ("[A]s the parties stipulated, there was no hearing before the arbitrators . . . . Without the hearing having taken place, it was not necessary for [the appellant] to prove that his rights were substantially prejudice[d] or that evidence he would have presented was material to the controversy in order to have the arbitration award vacated under [the applicable statute]. . . . In short, the failure to conduct [a] hearing . . . was tantamount to no arbitration. Unless parties agree otherwise, a hearing is a fundamental part of the arbitration process because [t]he arbitrators are the final judges of both law and fact, their award not being subject to reversal for a mistake of either." (Citations omitted; internal quotation marks omitted.)); see also *Gainesville* v. *Communications Workers of America, Local No. 3170*, Docket No. 1D21-32, 2022 WL 1089250, *3 (Fla. App. March 23, 2022) ("The arbitrator's summary disposition of the claim substantially prejudiced the [u]nion's rights because the [u]nion never got a full hearing with a chance to present evidence. . . . The [c]ity . . . contends that no prejudice could have resulted, stressing that the [u]nion has yet to present any evidence that would have changed the result. But the [c]ity cites nothing that requires a party to prove as much to establish substantial prejudice. Taking the [c]ity's proposed rule to its logical extent, a party could never be prejudiced when an arbitrator decides an issue 'as a matter of law.' In other words, an arbitrator could immediately decide a case, without notice, consent, or a hearing, and the losing party would be without recourse just because the nature of the arbitrator's decision precludes hearing evidence. This rule would directly contradict the basic principle that parties are entitled to a 'fundamentally fair hearing' which includes 'an opportunity to be heard and to present evidence.' ").

Even if Ahmed were required to demonstrate preju-

dice above and beyond the denial of a hearing, as the majority contends, he has met that burden. The majority concludes that Ahmed has failed to satisfy his burden because he does not argue on appeal that the arbitrator's refusal to hold a hearing on liability was prejudicial. Once again, I disagree with the majority's reading of Ahmed's brief to this court. Contrary to the majority's assertion, in his brief, Ahmed argues that the arbitrator's actions deprived him of the right to recover $35 million of personal assets that were held in an account at Oak. As the trial court explained, "[i]n connection with his termination, [Oak] claimed a contractual right to seize certain vested assets earned by [Ahmed] but which were still in [Oak's] possession. These assets were deemed forfeited to [Oak] based on [Oak's] interpretation of its contractual rights." The trial court further explained that, because of the arbitrator's disentitlement order, "[t]here has been no adjudication relating to the propriety of the forfeiture," which Ahmed had raised as a counterclaim in the arbitration case.[13] In his brief, Ahmed argues that, "[a]s a disputed issue of contract bearing directly on Oak's recovery in the arbitration, [he] had every right to challenge the seizure [of that money], either as a counterclaim or otherwise." Because of the arbitrator's actions, however, Ahmed was denied the opportunity to litigate that claim. Ahmed further argues that, "[h]ad [he] been allowed to testify at the liability hearing, he would have been able to offer further evidence of Oak's complicity [in the alleged fraud], including the fact that Oak's management exercised little to no supervision of his activities, and the fact that Oak regularly received money from Ahmed's personal account and yet wilfully did not question the source of those funds for over eleven years." This testimony bore directly on Ahmed's defenses of laches and unclean hands, among others, and on whether the facts of the case supported an award of punitive damages. In light of the foregoing, Ahmed has demonstrated that he was prejudiced by the disentitlement order.

In *Seagate Technology, LLC* v. *Western Digital Corp.*, supra, 854 N.W.2d 750, the Minnesota Supreme Court considered a similar challenge to an arbitration award under § 572.19, subd. 1 (3) and (4), of the Minnesota Statutes,[14] the language of which is nearly identical to Connecticut's and Delaware's statutes. The plaintiff in that case, Seagate Technology, LLC, commenced an arbitration proceeding against the defendants, Sining Mao, a former employee, and Western Digital Corporation (Western Digital), Mao's new employer, seeking to recover damages for Western Digital and Mao's misappropriation of the plaintiff's trade secrets. Id., 753–54. Prior to the arbitration hearing, the plaintiff filed a motion for punitive sanctions based on Mao's alleged fabrication of evidence. Id., 755. Specifically, the plaintiff requested an order precluding Western Digital and Mao from presenting any evidence or defense that dis-

puted the validity of the plaintiff's asserted trade secrets, the misappropriation of those trade secrets, or that Western Digital had used those trade secrets. Id. Western Digital and Mao responded by requesting that the arbitrator defer action on the motion until the arbitration hearing concluded, which request the arbitrator granted. Id.

Following the hearing, the arbitrator "concluded that Mao's fabrication of evidence and Western Digital's complicity by submitting the obviously fabricated evidence to the [a]rbitrator [were] an egregious form of litigation misconduct and warrant[ed] severe sanctions. The arbitrator then cited *Harris Trust & Savings Bank* v. *Ali*, [100 Ill. App. 3d 1, 10, 425 N.E.2d 1359] (1981), [for the proposition] that [w]hen evidence is . . . fabricated, a presumption arises that the cause of action or the defense it was intended to support is without substantial foundation. . . . The arbitrator imposed the following sanctions against Western Digital and Mao: [1] [p]reclusion of any evidence or defense . . . disputing the validity of [certain of the plaintiff's trade secrets] . . . [2] [p]reclusion of any evidence or defense . . . regarding misappropriation by Western Digital and Mao of [those trade secrets] . . . [3] [p]reclusion of any evidence or defense by Western Digital disputing that it has used or is using [the trade secrets] . . . in Western Digital's manufactured [products] . . . and [4] [e]ntry of judgment against Western Digital and [Mao as to] liability for misappropriation and use of [the trade secrets] . . . ." (Internal quotation marks omitted.) *Seagate Technology*, *LLC* v. *Western Digital Corp.*, supra, 854 N.W.2d 755–56.

On appeal to the Minnesota Supreme Court, Western Digital and Mao argued that (1) the arbitrator exceeded his authority under the parties' arbitration agreement in violation of § 572.19, subd. 1 (3), of the Minnesota Statutes by issuing the punitive sanctions; id., 760; and (2) the sanctions "violated the arbitrator's duty [under § 572.19, subd. 1 (4), of the Minnesota Statutes] to hear material evidence." Id., 766. With respect to the first claim, the court concluded that the sanctions "were . . . authorized by the AAA [rules], which were incorporated into the arbitration agreement and allow[ed] the arbitrator to grant 'any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs.'" Id., 763. Specifically, the court reasoned that "punitive sanctions fall within the ordinary meaning of relief. Punitive sanctions can also be properly construed as a remedy. . . . [T]he sanctions [in question] were issued in part to redress a wrong, the fabrication of evidence, which harmed [the plaintiff] during the arbitration. Thus, the sanctions constitute a remedy provided to [the plaintiff]." (Citation omitted.) Id.

In reaching its determination, the court was careful

to note that "[t]he arbitrator's ability to issue punitive sanctions is controlled by the arbitration agreement. . . . Therefore, parties are able to include or exclude the use of punitive sanctions when constructing an arbitration agreement, either through express provision or through the incorporation of a particular set of arbitration rules." (Citation omitted.) Id., 761. The court cited AAA Rule R-58 (a) as an example of an express contract provision delineating the circumstances under which an arbitrator may impose punitive sanctions. Id., 761 n.8. Because, unlike the arbitration agreement in the present case, the agreement in *Seagate Technology*, *LLC*, did not contain a rule limiting the arbitrator's authority to impose sanctions, the court concluded that the arbitrator could issue the sanctions in question under the arbitrator's general authority to fashion relief. Id., 763.

Significantly, in deciding the second claim, the court did not rely on the arbitrator's general grant of authority as a basis for upholding the denial of Western Digital and Mao's *statutory* right to present material evidence. Rather, the court concluded that the arbitrator's actions did not violate § 572.19, subd. 1 (4), of the Minnesota Statutes because the arbitrator "heard the challenged evidence at the request of Western Digital and Mao and conducted the hearing in accordance with [§ 572.12 of the Minnesota Statutes], which requires that the parties be heard, be allowed to present evidence material to the controversy, and be allowed to cross-examine the witnesses appearing at the hearing. Western Digital and Mao's challenge, therefore, centers not around the admission of evidence, but rather around the arbitrator's failure to use that evidence when constructing the final award. This challenge differs from our previous case law concerning an arbitrator's refusal to hear evidence, which has generally involved preventing a party from testifying or submitting certain evidence. . . .

"The scope of [§ 572.19, subd. 1 (4), of the Minnesota Statutes] is properly limited to situations involving the presentation and admission of evidence at the hearing, not situations involving the use or weighing of evidence in constructing the final award or other form of relief." (Citation omitted.) Id., 766. The court further stated that "the entire focus of these statutes is [on] how the hearing itself should be conducted, not the deliberation process that happens after the hearing." Id.

Thus, the court concluded that "it is appropriate to read [§ 572.19, subd. 1 (4), of the Minnesota Statutes] as a provision concerned with the . . . manner in which the hearing is conducted, not as a provision limiting the arbitrator's authority to use, or [to] refuse to use, certain evidence when providing relief or fashioning an award after the hearing has been completed. . . . Western Digital and Mao do not challenge any of the arbitrator's actions during the hearing, as [they] were allowed to present their case in full and the arbitra-

tor received the evidence in question. But the arbitrator chose not to factor this evidence into the final award because of sanctions that were [imposed] and . . . were permissible as within the arbitrator's authority. In short, Western Digital and Mao's challenge, which is primarily about the arbitrator's refusal to use certain evidence in fashioning the final award, is outside the scope of [§ 572.19, subd. 1 (4), of the Minnesota Statutes]." Id., 766–67.

In the present case, unlike in *Seagate Technology, LLC*, Ahmed's challenge falls squarely within the scope of § 52-418 (a) (3) and § 5706 (1) and (2) of title 10 of the Delaware Code Annotated as it involves the arbitrator's refusal to conduct a hearing on the merits of the parties' claims rather than the fashioning of the award at the conclusion of the hearing. Thus, *Seagate Technology, LLC*—in addition to the many other cases cited in this opinion—compels the conclusion that the arbitrator's award must be vacated. I therefore respectfully dissent.

[1] "[Although] courts possess inherent judicial powers that enable them to impose punitive sanctions . . . arbitrators have no correlating inherent authority and receive their powers from either the arbitration agreement . . . or the [l]egislature." (Citations omitted.) *Seagate Technology, LLC* v. *Western Digital Corp.*, 854 N.W.2d 750, 761 (Minn. 2014), citing *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

[2] The fugitive disentitlement doctrine, one of the most severe sanctions a court can impose, is "the rule that a fugitive (usually a criminal one) forfeits the right to appeal the judgment (usually a conviction) he's fleeing." *In re Kupperstein*, 943 F.3d 12, 15–16 (1st Cir. 2019). The policy behind the doctrine is "to ensure that courts don't waste time affirming a judgment that can't be enforced against the absconder." Id., 24. In discussing the fugitive disentitlement doctrine, the United States Supreme Court has stated that "[c]ourts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities" but that "[p]rinciples of deference counsel restraint in resorting to inherent power . . . and require its use to be a reasonable response to the problems and needs that provoke it . . . ." (Citations omitted.) *Degen* v. *United States*, 517 U.S. 820, 823–24, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996). *In re Kupperstein* offers an excellent primer on the doctrine, making clear the many reasons why, even if the right to arbitrate were not wholly contractual, and even if the arbitrator did not lack the inherent authority to impose punitive sanctions; see footnote 1 of this opinion; the fugitive disentitlement doctrine would still be inapplicable to this case. Among them is the fact that courts may not use "the fugitive dismissal power to protect another court's judgments or proceedings, or to sanction contempt for orders other than the judgment on review." *In re Kupperstein*, supra, 23–24. Because Ahmed was not a fugitive with respect to this case and had shown no contempt for any arbitral rule or ruling, application of the fugitive disentitlement doctrine was simply unwarranted.

[3] Unlike Delaware, Connecticut does not mandate that the arbitrator conduct a hearing. General Statutes § 52-407oo titled "Arbitration process," provides in relevant part: "(b) An arbitrator may decide a request for summary disposition of a claim or particular issue:

"(1) If all interested parties agree; or

"(2) Upon request of one party to the arbitration proceeding if that party gives notice to all other parties to the proceeding and the other parties have a reasonable opportunity to respond.

"(c) *If* an arbitrator orders a hearing, the arbitrator shall set a time and place and give notice of the hearing not less than five days before the hearing begins. . . ." (Emphasis added.)

Thus, our arbitration procedure statute provides "if" the arbitrator holds a hearing; General Statutes § 52-407oo; whereas Delaware's statute provides that the arbitrator "shall" hold a hearing unless the parties agree to forgo one. Del. Code Ann. tit. 10, § 5706 (1) (2013).

⁴ Section 5714 of title 10 of the Delaware Code Annotated governs applications to vacate arbitration awards and mirrors the language of our vacatur statute. See General Statutes § 52-418.

⁵ AAA Rule R-32 (a) provides: "The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case."

⁶ Ballentine's Law Dictionary defines "award" in relevant part as "[t]he decision, decree, or judgment of arbitrators determining the disputed matter submitted to them." Ballentine's Law Dictionary (3d Ed. 1969) p. 116.

⁷ During oral argument before the trial court, Ahmed's counsel made the identical argument, emphasizing AAA Rule R-58 specifically but relying on all of the AAA rules generally, stating: "Similarly, the AAA rules, and I won't belabor each and every rule, but, just to give Your Honor a flavor of what the body of . . . [the] rules incorporated [in] the [parties'] agreement requires . . . [Rule R-58] says . . . the arbitrator may not enter a default award as a sanction. So, that's quite plain. What the arbitrator invoked was [Rule R-47 (a)], that's in our brief, but that rule requires that any remedy or relief . . . be within . . . the scope of the agreement of the parties. And, as I've just explained, neither the employment agreement itself nor the sources of law that it incorporates permit . . . such a [sanction] . . . . In fact, they expressly forbid such a sanction. So . . . as our brief also recites . . . the [AAA] rules also require safeguarding each party's procedural rights to examine evidence, present their case, [and] develop a full record. And I'll just quickly note . . . [that the] one rule [that] . . . give[s] the arbitrator . . . the discretion to vary the procedure . . . [does so] provided that the parties are treated with equality that each party has the right to be heard and is given a fair opportunity to present its case."

⁸ Even if Ahmed had not made the argument in this case, I disagree with the majority's assertion that the distinction in *Meribear Productions, Inc.*, between claims and arguments does not apply in cases involving arbitration. The two cases the majority cites for support address entirely different issues. In *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 757 A.2d 501 (2000), this court concluded that "an arbitral award that requires the employer to reinstate an employee who has been terminated following his conviction, [on] the basis of . . . a plea [of nolo contendere], of embezzling the employer's funds, violates public policy." Id., 48. In support of that conclusion, we noted that, although a nolo contendere plea is not generally admissible to establish guilt in a court, it may be considered in an employment arbitration because of the "legitimate expectations of the employer that are inherent in the employment context and that would be severely undermined by requiring the reinstatement of an employee convicted of embezzling his employer's funds"; id., 51; and because the limits that are placed on the use of nolo contendere pleas by courts should not "necessarily" be extended to arbitration given the private nature of arbitration and our "deference to the arbitrator's factual determinations." Id., 52. In *Blondeau* v. *Baltierra*, 337 Conn. 127, 252 A.3d 317 (2020), this court concluded that "the arbitrator did not exceed her authority" in a family law arbitration. Id., 131. In neither of these cases is there any discussion of *Meribear Productions, Inc.*, of the power of an appellate court to raise arguments sua sponte, or of the preservation of claims and arguments for appeal. The only relevance of *Groton* or *Blondeau* appears to be their recognition that different procedural and evidentiary rules apply to courts and arbitrations (*Groton*) and that arbitral awards receive deferential review (*Blondeau*). They provide no authority, however, for the majority's contention that *Meribear Productions, Inc.*, does not apply to cases involving arbitration.

⁹ See footnote 4 of this opinion.

¹⁰ "Federal case law is instructive on this issue because . . . § 52-418 (a) (3) essentially tracks the language of the federal statute governing arbitral misconduct." *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 150 n.12, 523 A.2d 1271 (1987); see 9 U.S.C. § 10 (a) (3) (2018). New York law is similarly instructive because it contains a statute that mirrors the language of § 5706 of title 10 of the Delaware Code Annotated. See N.Y. C.P.L.R. 7506 (c) (McKinney 2013) ("[t]he parties are entitled to be heard, to present evidence and to cross-examine witnesses").

¹¹ This precedent has been recognized in Connecticut and distinguished by the fact that the respondent in *Cofinco, Inc.*, "never had an opportunity

to present evidence on the merits." *Media Group, Inc.* v. *Notaro*, Docket Nos. CV-02-0187595 and CV-02-0189157, 2002 WL 31898214, *3 (Conn. Super. December 13, 2002).

[12] The majority concludes that Ahmed would have been defaulted on the merits anyway because he failed to attend the damages hearing that was held on July 21, 2020. The difficulty with this conclusion is that it holds Ahmed responsible for conduct that never occurred as a result of the very order under review, which barred him from contesting liability. It is for good reason that Ahmed does not, in the words of the majority, "make the bizarre contention that (a) he would not have claimed to be unable to attend a [July 21, 2020] hearing had the hearing proceeded as one for liability rather than damages, or (b) he still would have claimed to have been unable to attend but nonetheless would have attended if the hearing was to determine liability." Such a contention would indeed be bizarre because we do not require a party to prove prejudice by means of hypothetical speculation in a case that was erroneously decided against him.

[13] As summarized by the trial court, "[Ahmed's] response [to Oak's statement of claims in the arbitration proceeding] asserted numerous defenses directed to both liability and damages (including laches, contributory negligence and set-off), as well counterclaims, most notably seeking restoration of the assets that [Oak] had treated as forfeited." The arbitrator dismissed Ahmed's counterclaims as part of the disentitlement order. Notably, in that same order, the arbitrator denied Ahmed's motion for summary judgment on the ground that the facts underlying his claims, including his forfeiture claim, were disputed.

[14] Section 572.19, subd. 1, of the Minnesota Statutes (2010) provides in relevant part: "Upon application of a party, the court shall vacate an award where . . . (3) The arbitrators exceeded their powers [or] (4) The arbitrators refused . . . to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 572.12, as to prejudice substantially the rights of a party . . . ."

Section 572.12 of the Minnesota Statutes (2010) provides in relevant part: "Unless otherwise provided by agreement . . . (b) [t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing."